IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| BENCHMARK HOMES, INC., | ) | CASE NO. BK06-80243 |
| ASHFORD HOLLOW, L.L.C., | ) | CASE NO. BK06-80248 |
| SADDLEBROOK PROPERTIES, L.L.C., | ) | CASE NO. BK06-80249 |
| ONE NINETY-TWO, L.L.C., | ) | CASE NO. BK06-80250 |
| CANTERBERRY CROSSING, L.L.C., | ) | CASE NO. BK06-80251 |
| | ) | |
| Debtor(s). | ) | |
| GREAT WESTERN BANK, | ) | ADV. NO. A06-8074 |
| | ) | |
| Plaintiff, | ) | CH. 11 |
| | ) | |
| vs. | ) | Filing No. 141, 202 |
| | ) | |
| THOMAS D. STALNAKER, Chapter 11 | ) | |
| Trustee, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM

    This matter is before the court on defendant's motion for partial summary judgment (Fil. #141) and resistance by the plaintiff (Fil. #202). Robert Becker and Ann Grottveit represent the trustee; T. Randall Wright and Brandon Tomjack represent Great Western Bank; and Donald Swanson and R. Scott Johnson represent the Official Committee of Construction Lien Claimants. The motion was taken under advisement as submitted without oral arguments. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(K).

    The plaintiff, Great Western Bank, has filed this adversary proceeding to obtain a determination of the extent and validity of liens on certain real property located in the Omaha, Nebraska, area. Defendant Benchmark Homes, Inc. ("Benchmark"), is a corporation headquartered in Omaha, Douglas County, Nebraska. Its sole shareholder was John Czerwinski, an individual now deceased. On March 7, 2006, Benchmark filed its voluntary Chapter 11 petition. Thereafter, Thomas D. Stalnaker was appointed Chapter 11 trustee. Defendants Ashford Hollow, LLC; One Ninety-Two, L.L.C.; Saddlebrook Properties, L.L.C.; and Canterberry Crossing, LLC (collectively "the LLCs") are each single-member limited liability companies which were formed and controlled by John Czerwinski. They filed their voluntary petitions on or about March 8, 2006.Thereafter, the cases were administratively consolidated with the Benchmark case and Thomas Stalnaker was appointed trustee in each of the debtor LLCs.

    The remaining defendants are companies or individuals who have provided or purport to have provided materials, services, or equipment relating to the construction of certain houses which are owned by one or more of the debtors, and have filed documents which are or purport to be construction liens against houses which Great Western Bank financed. These defendants are

referred to as "Construction Lien Claimants."

Prior to the filing of the bankruptcy cases, Great Western Bank had a longstanding lending relationship with Benchmark. Benchmark was controlled by John Czerwinski. Benchmark is indebted to Great Western Bank in an amount that exceeds 4.8 million dollars on a note referred to as the Construction Note.

Monies loaned by Great Western Bank pursuant to the Construction Note were used by Benchmark to finance the acquisition, construction and sale of residential real property in Douglas County and Sarpy County, Nebraska. According to the complaint, the process of financing the construction of a Benchmark-built home involved several steps. Benchmark or one of its customers would identify plans for a house it wanted to build on a lot owned or to be acquired by Benchmark. The house would be designated either as a "pre-sold" house (meaning that a buyer had already contracted with Benchmark to buy it) or a "spec" house (meaning that no buyer for the home had yet been identified). Benchmark would notify Great Western Bank of the need for a construction advance against the Construction Note to construct such house. Benchmark would provide certain information concerning the asking or selling price for the house, its probable value upon completion, and the amount of the loan needed to build it. If the request for loan advance was approved by Great Western Bank, Benchmark would execute a "construction deed of trust" and a "construction loan agreement" in which it would represent, among other things, that it owned the real property upon which the house was to be built. Once the construction deed of trust was executed, Great Western Bank would record the construction deed of trust against the real property. Benchmark would then execute a "notice of commencement" indicating that construction on the real property had commenced. Great Western Bank would record the notice of commencement with the office of the Register of Deeds of the county in which the property was situated. The notice of commencement typically stated or indicated that Benchmark Homes was the "contracting owner" of the real property.

Beginning in approximately 1999, the real property purchased for the purpose of allowing Benchmark to build houses was put in the name of one or more of the debtor LLCs. Benchmark continued to enter into real estate purchase contracts under the Benchmark name as seller, directly with home buyers, even though Benchmark did not own the property on which the homes were built. Benchmark continued to execute construction deeds of trust which stated affirmatively that it held "good and marketable title of record to the property in fee simple" even though it did not own such property. At some point during or following the construction process, the L.L.C. that owned the property would convey the property to the buyer who had contracted with Benchmark for the purchase of the home or would convey the property to Benchmark for eventual conveyance to the buyer. At or near the time of closing, the sale proceeds would be used to pay off the Great Western Bank construction loan for such house.

As of the date Benchmark filed its bankruptcy, there were approximately twenty-five houses financed by Great Western Bank at the request of Benchmark, some of which were incomplete. Benchmark did not hold legal title to any of them. Instead, title was held by one of the debtor LLCs.

Great Western Bank has filed this complaint in an attempt to obtain a judicial determination that the deeds of trust referred to above give Great Western Bank a first lien against the properties owned by the LLCs even though each deed of trust was executed not by the manager of any of the LLCs but by Mr. Czerwinski in his capacity as president of Benchmark. The complaint asserts four causes of action. The first cause of action asserts that Benchmark executed the construction

deeds of trust as agent for the title-holding debtor L.L.C. of the particular property identified in the construction deeds of trust. According to the complaint, such construction deeds of trust should be found to be first and prior liens against such property, superior to the claim of any and all of the other defendants.

The second cause of action is reformation. The plaintiff, Great Western Bank, asserts that the construction deeds of trust were executed by John Czerwinski in the name of Benchmark by mistake, and such documents should be reformed to reflect the true intent of the parties, that being to encumber the property financed by Great Western Bank but owned by the particular debtor LLCs.

The third cause of action concerns the assertion of an equitable lien. The bank asserts that having advanced monies for construction of the houses in good faith, Great Western Bank should be granted an equitable lien, first and prior to the liens and interests of all defendants.

The fourth cause of action requests the imposition of a constructive trust. It asserts that due to the conduct of Benchmark and Czerwinski in misrepresenting ownership of the real property to be in the name of Benchmark, even though they knew that Benchmark did not own the real property, and due to Czerwinski's ownership and control of Benchmark and the LLCs, the court should impose a constructive trust against the real property in favor of Great Western Bank and superior to the interest of all the other defendants.

Defendant Thomas D. Stalnaker, Trustee, has filed a motion for partial summary judgment requesting an order dismissing the second cause of action of the complaint for the reason that the remedy of reformation is not a remedy available to change a party to a document from one entity to another. The motion alleges that there is no genuine issue of material fact and that the trustee is entitled to judgment as a matter of law.

The motion for partial summary judgment has been resisted by Great Western Bank. The court permitted the Official Committee of Construction Lien Claimants ("Committee") to intervene for the limited purpose of joining the position of the trustee and filing one or more briefs in support of the trustee's position.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Aviation Charter, Inc. v. Aviation Research Group/US, 416 F.3d 864, 868 (8th Cir. 2005); Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.), 371 F.3d 397, 401 (8th Cir. 2004).

With regard to the question of whether the construction deeds of trust may be reformed for the benefit of Great Western Bank, there are no genuine issues as to any material facts. Great Western Bank wants the court to find that both it and Mr. Czerwinski made a mistake with regard to the ownership of each of the twenty-five lots and that such mutual mistake permits the court to substitute the actual lot owner, one of the LLCs, as trustor in the granting clause and in the acknowledgment. Great Western Bank asserts that it was the intent of Mr. Czerwinski as the president of Benchmark and as the managing member of the LLCs to act on behalf of the true

owners and grant a lien on the real property owned by the LLCs in favor of Great Western Bank.

The trustee and the Committee take the position that reformation of a deed or deed of trust relating to real property can be had only with regard to the contents of the deed of trust, such as the legal description or other terms relating to the transaction itself.  From their point of view, reformation does not lie with regard to changing parties to the deed of trust.  In addition, the Committee and the trustee take the position that they are each bona fide purchasers for value whose rights cannot be overridden by reformation of the deeds of trust, an act which would impair their rights.

The undisputed facts are that the real estate in question was owned by one of the LLCs.  Under Nebraska law, LLCs are separate legal entities.  Mr. Czerwinski, the manager of the LLCs and the president of Benchmark, executed each of the deeds of trust in his capacity as president of Benchmark, with Benchmark named in each deed of trust as the trustor.  His signature was acknowledged in each deed of trust as the president of Benchmark.  Benchmark had no ownership interest in the land described in the deeds of trust.

Generally, the remedy of reformation has been described as follows:

> "Reformation" is that remedy by means of which a written instrument is made or construed to express or conform to the real intention of the parties when some error or mistake has been committed.  A reformation occurs when a court determines an instrument does not reflect the terms intended by the parties to it and then revises the terms written in the instrument to reflect the terms of the parties. . . .
> . . . Courts are not at liberty, under the guise of reformation, to rewrite the parties' agreement and foist upon the parties a contract they never made.  Accordingly, by reformation, a court is not making a new contract but, rather, gives effect to the contract which the parties in fact made . . . .

66 Am. Jur. 2d Reformation of Instruments § 1 at 226 (footnotes omitted).

Cases regarding reformation of deeds of trust, mortgages, and deeds actually conveying title to real estate all deal with interests in real estate and are applicable in this case. Nebraska law is the same as the general rule found in the treatise above. As stated in the case of Smith v. Hornkohl, 166 Neb. 702, 711, 90 N.W.2d 347, 354 (1958), "Equity may reform a contract for the purchase of land so as to include terms upon which the parties definitely agreed . . . ." Additionally, in Ready Sand & Gravel Co. v. Cornett, 184 Neb. 726, 726-27, 171 N.W.2d 775, 777 (1969), the Nebraska Supreme Court stated: "To grant such relief [reformation], equity insists that the reformation must be consistent with a complete mutual understanding of the essential terms of their bargain." In another recent case, the Nebraska Supreme Court stated, "Equitable relief by reformation depends on whether the instrument to be reformed expresses the intent of the parties." Newton v. Brown, 222 Neb. 605, 612, 386 N.W.2d 424, 429 (1986).

This issue has been extensively briefed by the parties.  No case has been cited in which a court has used the remedy of reformation to change the name of a grantor in a deed or trustor in a deed of trust.

The case of Troyer v. Mundy, 60 F.2d 818 (8th Cir. 1932), applying Nebraska law, is

analogous to the situation in this case. Rather than attempting to change the name of the grantor or trustor, the plaintiff was attempting to obtain a change of the name recited in the acknowledgment as the mortgagor. In that case, there was a mortgage from Peter Mundy to his wife, Anise Mundy. The mortgage was signed by Peter Mundy alone. The acknowledgment recites that Anise Mundy appeared and acknowledged the execution of the instrument but does not recite any appearance nor acknowledgment by Peter Mundy, the mortgagor. The Mundys attempted to introduce parol evidence to show that the recital in the acknowledgment was an error of the notary preparing the mortgage and that Peter Mundy did in fact acknowledge the instrument before the notary public.

The Eighth Circuit Court of Appeals refused to reform the instrument. It stated:

> The lower court, in a conclusion of law entered at the close of all the evidence, held that parol evidence was not admissible to prove the fact that the mortgage had been properly acknowledged by the mortgagor, and that the recitals contained in the notary's certificate of acknowledgment were not subject to impeachment by such evidence. In so holding the court was clearly correct.

60 F.2d at 820.

Great Western Bank claims that the absence of Nebraska case law specifically refusing to reform a real estate instrument by changing the name of the grantor or trustor should be interpreted to mean there is no prohibition on such reformation. Of course, the trustee and the Committee suggest the opposite is true. It is their position that the absence of case law authorizing reformation of the grantor or trustor's name should be interpreted to mean that such reformation cannot lie.

Although it appears to me that the general rule that reformation of an instrument deals with the contents of the instrument and not the name of the maker, grantor, or trustor, there is an additional reason why reformation is not permissible in this case. That is, the trustee and the Construction Lien Claimants are clothed as a matter of law with the status of bona fide purchasers. By virtue of 11 U.S.C. § 544(a)(3), as of the date of the bankruptcy filing, the trustee is granted bona fide purchaser status. For the Construction Lien Claimants, bona fide purchaser status is provided by Neb. Rev. Stat. § 52-139(1), which grants to construction lien holders the status of "a purchaser for value without knowledge who had recorded at the time his or her lien attached." In this case, the liens of the Construction Lien Claimants attached prior to the date of the bankruptcy filing.

In Nebraska, reformation is not effective as against bona fide purchasers without notice. "If third persons have acquired rights in the subject-matter of the suit without notice of the mistake, or of the rights of the party claiming under the instrument in which the mistake occurs, in good faith, that fact may bar the right to reformation, so far as such third persons would be affected thereby." Carter v. Leonard, 65 Neb. 670, 670, 91 N.W. 574, 574 (1902). In Miller v. Vanicek, 106 Neb. 661, 664, 184 N.W. 132, 133 (1921), the Nebraska Supreme Court stated the "general rule" that a "mistake will not be corrected in equity as against the rights of innocent third parties." In addition, the Miller court stated that reformation only lies as to the original contracting parties and "subsequent purchasers chargeable with notice of the mistake." Miller, 106 Neb. at 664, 184 N.W. at 134. "A reformed contract is not effective against a bona-fide purchaser for value . . . without notice of the mistake." Nash Finch Co. v. Rubloff Hastings, L.L.C., 341 F.3d 846 (8th Cir. 2003)

(interpreting Nebraska law).

The deeds of trust in this case do not provide constructive, inquiry, or actual notice of any of Great Western Bank's claims to lien interests in the properties. The deeds of trust in this case are signed by a non-owner and are therefore outside the chain of title, even though they are recorded and indexed by legal description and a party searching the title would discover the deed of trust. The law in Nebraska on this issue is ancient:

> [T]he record of a conveyance or mortgage is constructive notice to those alone who must trace their title through the grantor or mortgagor by whom the deed or mortgage was made. The plaintiff's mortgage [signed by someone other than the owner of record], therefore, was not constructive notice to the defendants.

Traphagen v. Irwin, 18 Neb. 195, 198, 24 N.W. 684, 685 (1885).

In Traphagen, the owner of record, B.F. Cobb, conveyed certain real property to William Royce by warranty deed and received a mortgage back. Royce did not record the warranty deed, but the mortgage was apparently recorded. Subsequently, B.F. Cobb, still the owner of record, agreed to sell the same property to Sarah Pound and granted a mortgage thereon to Defendant Irwin. It was in this context that the court declared the recorded mortgage from Royce, who was not the owner of record, to be ineffective to provide constructive notice of Royce's interest in the real estate under the unrecorded deed.

In Traphagen, the mortgage granted by a person who had received a deed but not recorded it was deemed to not provide constructive notice of the interest of the mortgagee in the real estate. Here, Benchmark was not an entity that had received a deed but simply failed to record it. Benchmark had not received a deed and therefore had no interest in the real property. Deeds of trust purporting to grant an interest in real estate by Benchmark, a stranger to the title, do not provide constructive notice of Great Western Bank's interest in the land.

Similarly, neither the Construction Lien Claimants nor the trustee can be charged with actual knowledge that the trustee or any creditor might hold. The statutory provisions giving them bona fide purchaser status, Neb. Rev. Stat. § 52-139(1) for the Construction Lien Claimants and 11 U.S.C. § 544(a)(3) for the trustee, give them each the status of a purchaser for value without knowledge.

In conclusion, the trustee's motion for partial summary judgment is granted. The deeds of trust executed and acknowledged by Benchmark do not give Great Western Bank an interest in real estate owned by the individual LLCs. The deeds of trust cannot be reformed to change the name of the trustor either in the granting clause or in the acknowledgment. In addition, even if such reformation is legally permitted, the deeds of trust cannot be reformed because such reformation would impair the interest of intervening third parties, the trustee and the Construction Lien Claimants, as bona fide purchasers for value without knowledge of the interest of Great Western Bank.

Separate order will be entered.

DATED this 2nd day of April, 2007.

BY THE COURT:

/s/ Timothy J. Mahoney
Chief Judge

Notice given by the Court to:
    *Robert J. Becker/Ann Grottveit
    T. Randall Wright
    Brandon R. Tomjack
    Donald L. Swanson
    R. Scott Johnson

*Movant is responsible for giving notice to other parties if required by rule or statute.